UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CLAUDE NUGENT,                                   )        No. CV 12-3757-PLA
                                                 )
                        Petitioner,              )
                                                 )
             v.                                  )        **MEMORANDUM DECISION AND ORDER**
                                                 )
B. PAHEL, Assoc. Warden,                         )
                                                 )
                        Respondent.              )
_____ )

## I.

## SUMMARY OF PROCEEDINGS

On March 16, 2009, a Los Angeles County Superior Court jury convicted petitioner of the sale, transportation, or offer to sell a controlled substance (Cal. Health & Safety Code § 11352(a)). (Reporter's Transcript ("RT") 1501, 1507-09; Clerk's Transcript ("CT") 108, 111-12, 149). Petitioner admitted that he had prior convictions, and was sentenced to a term of eight years in state prison.  (RT 1504-06, 2401, 2418-19; CT 109-10, 147-49).

Petitioner filed a direct appeal.  On December 8, 2010, the California Court of Appeal affirmed the conviction.  (Lodgment Nos. 4, 9).  On February 16, 2011, the California Supreme Court denied review.  (Lodgment Nos. 10, 11).

On March 8, 2011, petitioner filed a habeas petition in the Los Angeles County Superior Court, which was denied on March 18, 2011. (Lodgment Nos. 12, 13). On July 5, 2011, petitioner filed a habeas petition in the California Court of Appeal, which was denied on July 19, 2011. (Lodgment Nos. 14, 15). On August 3, 2011, petitioner filed a habeas petition in the California Supreme Court, which was denied on December 21, 2011. (Lodgment Nos. 16, 17).

On May 1, 2012, petitioner filed his Petition in this Court, and consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. On July 12, 2012, respondent filed an Answer and Return, and also consented to have the undersigned Magistrate Judge conduct all further proceedings. On September 13, 2012, petitioner filed a Reply to the Answer.

This matter has been taken under submission, and is ready for decision.

## II.

## STATEMENT OF FACTS

On the evening of December 9, 2008, Officer Romeo Rubalcava of the Los Angeles Police Department was working as an undercover narcotics officer in the area of San Pedro Street and Sixth Street in Los Angeles. (RT 615-17, 670-71). Rock cocaine (cocaine base) was the predominant drug sold in the area, followed by heroin, and the corner of San Pedro and Sixth Street was known for drug activity. (RT 619, 628-29, 636). Officer Rubalcava had been a police officer for 10 years, and he had worked as an undercover narcotics officer for 6.5 years. He had personally arrested over 450 individuals for narcotics offenses, and had been involved in more than 6,000 drug-related "operations." (RT 615-17).

While Officer Rubalcava was standing on the southwest corner at the intersection of San Pedro and Sixth Street, petitioner called out, "Hey, hey." (RT 620). The officer turned and saw petitioner sitting in front of the Midnight Mission and looking in his direction. Petitioner asked, "You looking for something?" (RT 620-21). Based on Officer Rubalcava's training and experience, he formed the opinion that petitioner was asking if he was looking for narcotics. The officer approached petitioner and asked "if he could do a 20," which was street vernacular for $20 worth

of narcotics.  (RT 622).  Petitioner replied, "Yeah, I got it. Sit down and give me the money.  You know, the police are rolling around here."  (RT 622).[1]

Officer Rubalcava sat down next to petitioner and handed him a "prerecorded" $20 bill, which petitioner accepted.[2]  (RT 622-23).  Petitioner told the officer to wait for him and said he was going across the street.  (RT 624).  Before petitioner left, he told Officer Rubalcava that he was leaving his blanket as collateral.  (RT 625).

Officer Rubalcava watched petitioner cross the street and approach three separate individuals who were standing on the sidewalk about 15 to 20 feet apart from each other.  With each individual, it appeared that petitioner made eye contact and engaged in a brief conversation.  Officer Rubalcava knew from his experience that rock cocaine sellers frequented the side of the street where these three individuals were located.  (RT 626-29, 636-38).

After petitioner spoke to the third person, he walked north to Seventh Street and proceeded eastbound until Officer Rubalcava momentarily lost sight of him.  (RT 638-39).  Five to ten minutes later, the officer regained sight of petitioner as petitioner was crossing the street in the area of Seventh and Towne Streets.  Petitioner then continued walking back in the general direction of Sixth and San Pedro.  Officer Rubalcava testified that, along the route petitioner took, the "drug of choice" was rock cocaine.  When petitioner reached the southwest corner of Seventh and San Pedro, he boarded a bus that left the area.  (RT 639-45, 662).  Other officers stopped the bus and arrested petitioner.  The prerecorded $20 bill was recovered from petitioner's pocket, and no drugs were found.  (RT 915-17, 947-53).

/

/

---

[1]   Officer Rubalcava explained that he did not request a specific drug because there was a chance that petitioner would not have it.  He wanted to purchase whatever drug petitioner had, and he did not want to arouse suspicion by changing the type of drug requested.  (RT 634-35).  When Officer Rubalcava asked if petitioner could "do a 20," he had either rock cocaine or heroin in mind, but thought rock cocaine was more likely.  (RT 691-92).

[2]   Officers record, or photocopy, the money they use in their undercover operations so that after an officer makes an arrest, the money retrieved from the suspect can be compared with the photocopied money in order to match serial numbers.  (RT 623).

1

2

**III.**

**PETITIONER'S CONTENTIONS**[3]

3

4

      1.     Ground One:  Petitioner's trial counsel rendered ineffective assistance.  (Petition at 5).

5

6

      2.     Ground Three:  There was insufficient evidence to sustain the conviction.  (Petition at 5-6).

7

      3.     Ground Four:  The trial court committed error.  (Petition at 6).

8

9

**IV.**

10

**STANDARD OF REVIEW**

11

      The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty

12

Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court

13

applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct.

14

2059, 138 L.Ed.2d 481 (1997).

15

      Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a

16

person in state custody "with respect to any claim that was adjudicated on the merits in State court

17

proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to,

18

or involved an unreasonable application of, clearly established Federal law, as determined by the

19

Supreme Court of the United States; or (2) resulted in a decision that was based on an

20

unreasonable determination of the facts in light of the evidence presented in the State court

21

proceeding."  28 U.S.C. § 2254(d).  As explained by the Supreme Court, section 2254(d)(1)

22

"places a new constraint on the power of a federal habeas court to grant a state prisoner's

23

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state

24

25

26

27

28

---

    [3]    Petitioner lists three grounds for relief in total, but identifies them in the Petition as Grounds One, Three, and Four instead of Grounds One, Two, and Three.  (Petition at 5-6). Respondent in the Answer addresses the grounds as Grounds One, Three, and Four. Accordingly, for the sake of uniformity, the Court also addresses the three grounds as Grounds One, Three, and Four, and simply notes that there is no Ground Two.

court." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529

1  U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003).
2  Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be
3  presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing
4  evidence."

5      A federal habeas court conducting an analysis under § 2254(d) "must determine what
6  arguments or theories supported, or, [in the case of an unexplained denial on the merits], could
7  have supported, the state court's decision; and then it must ask whether it is possible fairminded
8  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior
9  decision of [the Supreme Court]." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 786, 178
10 L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal
11 habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
12 decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must
13 show that the state court's ruling on the claim being presented in federal court was so lacking in
14 justification that there was an error well understood and comprehended in existing law beyond any
15 possibility for fairminded disagreement." Id. at 786-87.

16      The United States Supreme Court has held that "[w]here there has been one reasoned
17 state judgment rejecting a federal claim, later unexplained orders upholding that judgment or
18 rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803,
19 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Here, petitioner presented his ineffective assistance
20 claim in Ground One in his round of state habeas petitions. The Los Angeles County Superior
21 Court rejected the claim in a reasoned decision, while the California Supreme Court denied the
22 claim without comment. Under these circumstances, the Court "looks through" the California
23 Supreme Court's summary denial and reviews the superior court's opinion under the AEDPA
24 standards. See Ylst, 501 U.S. at 803; Cannedy v. Adams, __ F.3d __, 2013 WL 452827, at *9 (9th
25 Cir. Feb. 7, 2013) (applying the "look through" doctrine to state habeas denials).

26      As for petitioner's challenge to the sufficiency of the evidence in Ground Three, petitioner
27 presented this claim in his direct appeal. The California Court of Appeal rejected it in a reasoned
28

decision, while the California Supreme Court denied review without comment or citation. Accordingly, the Court reviews the California Court of Appeal's opinion under the AEDPA standards. See Ylst, 501 U.S. at 803.

Petitioner's claim of trial court error in Ground Four, however, is not exhausted, as petitioner did not present this claim in his direct review or in his round of habeas petitions. For a court to address an unexhausted claim on the merits, it must be "perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005). Here, because it is clear that petitioner fails to raise a colorable federal claim in Ground Four, the Court exercises its discretion to address and reject the claim on the merits in a de novo review. Cassett, 406 F.3d at 623-24.

**V.**

**DISCUSSION**

**GROUND ONE:     INEFFECTIVE ASSISTANCE OF COUNSEL**

In Ground One, petitioner raises an ineffective assistance of counsel claim. Specifically, he asserts that his counsel was ineffective for failing to "submit objections and motions after consultation with petitioner for specific factual direction of case, necessary to bring into evidence which would have allowed jury to be aware of during trial [sic]." (Petition at 5).

Petitioner raised his ineffective assistance claim in his round of state habeas petitions. The Los Angeles County Superior Court rejected the claim on the basis that petitioner failed to show prejudice. (Lodgment No. 13).

In federal habeas proceedings, the two-step analysis outlined by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs ineffective assistance claims. Under Strickland, petitioner first must prove that his attorney's representation fell below an objective standard of reasonableness by identifying the acts or omissions that rendered the representation objectively unreasonable. Id. at 687-88, 690. An attorney's performance is deemed deficient if it is objectively unreasonable under prevailing professional norms. Id. at 687-88; Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990). Review

1   of counsel's performance is highly deferential, and the petitioner must overcome the strong

2   presumption that counsel's conduct fell within the wide range of reasonable representation.

3   Strickland, 466 U.S. at 689.  In reviewing a challenge to the effectiveness of trial counsel, the court

4   must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the

5   circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

6   perspective at the time." Strickland, 466 U.S. at 689.

7        With respect to the second prong of the Strickland analysis, a petitioner must show

8   prejudice by demonstrating a reasonable probability that, but for counsel's error, the result of the

9   proceeding would have been different. Strickland, 466 U.S. at 694.  A "reasonable probability" is

10  defined as "a probability sufficient to undermine confidence in the outcome." Id.  Additionally,

11  petitioner bears the burden of satisfying both prongs of the Strickland standard.  Strickland, 466

12  U.S. at 687; Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010).  Because petitioner must

13  prove both deficient performance and prejudice, a federal court "need not determine whether

14  counsel's performance was deficient before examining the prejudice suffered by the defendant as

15  a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

16  ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at

17  697.

18       Here, petitioner's claim of ineffective assistance is without merit, as his assertions are too

19  vague and conclusory to justify a habeas remedy.  See James v. Borg, 24 F.3d 20, 26 (9th Cir.

20  1994) ("Conclusory allegations which are not supported by a statement of specific facts do not

21  warrant habeas relief"); United States v. Smith, 924 F.2d 889, 896 (9th Cir. 1991) ("[U]nsupported

22  and conclusory claims are not sufficient to show error.").  Although petitioner contends that his

23  attorney's failure to file unspecified motions and raise unspecified objections amounted to deficient

24  performance, he does not identify any specific information or facts that would have been obtained,

25  or alternatively, information that would have been excluded from trial, as a result of such motions

26  and objections.  Nor does petitioner explain how the motions and/or objections, had they been filed

27  and/or raised, would have resulted in a different verdict.  In short, because petitioner has not

28  identified with the required specificity the acts or omissions demonstrating that his counsel

8

1  performed outside the range of reasonable performance, and has failed to explain how his

2  counsel's conduct prejudiced him, petitioner has not satisfied his burden of proving that he is

3  entitled to habeas relief. See Strickland, 466 U.S. at 690 ("A convicted defendant making a claim

4  of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have

5  been the result of reasonable professional judgment."); Silva v. Woodford, 279 F.3d 825, 835 (9th

6  Cir. 2002).

7       For these reasons, the state court's rejection of this claim was not contrary to, or an

8  unreasonable application of, the Strickland standard.  28 U.S.C. § 2254(d).  Habeas relief for

9  Ground One is denied.

10

11  **GROUND THREE:  INSUFFICIENT EVIDENCE**

12       Petitioner asserts in Ground Three that there was insufficient evidence to sustain the

13  conviction, because the "facts presented by [the] prosecution did not offer a clear showing

14  petitioner intended that any drugs be sold."  (Petition at 6).

15       In a federal habeas proceeding, a petitioner challenging the sufficiency of the evidence may

16  obtain relief only if "it is found that upon the record evidence adduced at the trial no rational trier

17  of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S.

18  307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  "[T]he relevant question is whether, after viewing

19  the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

20  found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in

21  original); see also Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000)  A reviewing court's

22  "reversal for insufficiency of the evidence is in effect a determination that the government's case

23  against the defendant was so lacking that the trial court should have entered a judgment of

24  acquittal." McDaniel v. Brown, 558 U.S. 120, 130 S.Ct. 665, 672, 175 L.Ed.2d 582 (2010) (quoting

25  Lockhart v. Nelson, 488 U.S. 33, 39, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)) (internal quotations

26  omitted).

27       "[I]t is the responsibility of the jury -- not the court -- to decide what conclusions should be

28  drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the

9

1    ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."

2    Cavazos v. Smith, __ U.S. __, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  Accordingly,

3    the reviewing court "must respect the province of the jury to determine the credibility of witnesses,

4    resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that

5    the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d

6    1355, 1358 (9th Cir. 1995).  If the record supports conflicting inferences, the Court "must presume

7    -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such

8    conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

9         Federal courts must look to state law to determine what evidence is sufficient.  Jackson,

10   443 U.S. at 324 n. 16.  Moreover, a reviewing habeas court applies "an additional layer of

11   deference" under AEDPA:  habeas relief is not warranted unless "the state court's application of

12   the Jackson standard [was] 'objectively unreasonable.'" Juan H. v. Allen, 408 F.3d 1262, 1274,

13   1275 n.13 (9th Cir. 2005) (as amended) (citation omitted); see also Cavazos v. Smith, 132 S.Ct.

14   at 4 ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the

15   evidence challenge simply because the federal court disagrees with the state court.  The federal

16   court instead may do so only if the state court decision was 'objectively unreasonable.'") (citation

17   omitted).

18        The jury in petitioner's case was instructed pursuant to CALJIC No. 12.03 that, in order to

19   find petitioner guilty of violating California Health & Safety Code § 11352, the prosecution needed

20   to prove beyond a reasonable doubt that petitioner:  (1) offered to sell the controlled substances

21   of either cocaine or heroin; and (2) made the offer with the specific intent to sell the controlled

22   substance. (RT 1297-98; CT 82).  The instruction further stated that the prosecution did not have

23   to prove that petitioner actually possessed the controlled substance.  (Id.).  Under California law,

24   a violation of California Health & Safety Code § 11352(a) "is complete when an offer is made with

25   the accompanying requisite intent; neither delivery of the drug, an exchange of money, nor a

26   direct, unequivocal act toward a sale are necessary elements of the offense." People v. Encerti,

27   130 Cal.App.3d 791, 800-01 (Cal.App. 1 Dist. 1982).

28   /

A.     The California Court of Appeal's Opinion

On direct appeal, the California Court of Appeal rejected petitioner's claim challenging the sufficiency of the evidence as follows:

> The evidence establishes that [petitioner], while located on a street known for narcotics sales called out to an undercover narcotics officer and asked if he was "looking for something." The officer asked [petitioner] for a "20," and handed him a $20 bill. Although the officer did not specifically refer to a type of drug, he knew from his experience that the primary drugs sold in the area were rock cocaine and heroin. [Petitioner] then approached three different individuals on the other side of the street, which was known to be frequented by drug dealers, and was seen speaking to each of them. [Petitioner] told the officer he was leaving his blanket behind as collateral, which conveyed his understanding that he would be returning after purchasing the drugs. When [petitioner's] attempts to complete the purchase were unsuccessful, he proceeded on the route where rock cocaine was predominantly sold. From these facts, the jury could reasonably infer that [petitioner] made an offer to sell either rock cocaine or heroin with the specific intent to sell either drug, notwithstanding that he apparently abandoned that intent after his attempt to complete the sale was unsuccessful.
>
> In arguing to the contrary, [petitioner] purports to distinguish the facts in this case from those presented in People v. May (1964) 224 Cal.App.2d 436, a case in which the court found sufficient evidence to support a conviction for offering to sell marijuana in violation of section 11531. Although he correctly notes that the defendant in May referred to the specific drug he intended to sell to the undercover buyer and provided details regarding his plan to purchase the drugs, nothing in the opinion suggests that such facts are essential to a conviction for offering to sell marijuana under section 11531 or, by analogy, offering to sell a controlled substance under subdivision (a) of section 11352. A defendant's intent to sell a controlled substance need not be established by direct evidence, but rather "can be established by circumstantial evidence and any reasonable inferences drawn from that evidence." (People v. Meza (1995) 38 Cal.App.4th 1741, 1746.) As we have explained, the circumstantial evidence presented at trial is sufficient to support the jury's positive finding in this regard.
>
> [Petitioner's] reliance on People v. Jackson (1963) 59 Cal.2d 468, is also unavailing. The holding upon which he relies did not involve a claim of insufficient evidence to support a conviction for offering to sell a controlled substance, but rather related to the trial court's error in failing to instruct the jury that specific intent to sell a controlled substance is an essential element of the charge. In deeming the error prejudicial, the Supreme Court reasoned that there was evidence from which the jury could have found the defendant merely intended to commit theft by fraud. (Id. at pp. 469-470.) Our task here is to decide whether the evidence is sufficient to support a conviction. In making that determination, it is irrelevant whether the

11

same evidence could have led to an acquittal.  (<u>People v. Ochoa</u>, supra, 6 Cal.4th at p. 1206.)[4]

Faring no better is [petitioner's] attack on the sufficiency of the evidence supporting the finding that he intended to sell either cocaine or heroin, as opposed to some other drug such as marijuana.  The fact that neither [petitioner] nor Officer Rubalcava specifically referred to either drug is not determinative.  The circumstantial evidence, considered in conjunction with Officer Rubalcava's expert opinion testimony on the issue, is sufficient to support the finding that [petitioner] had offered to sell either cocaine or heroin.  The officer testified that in his 10 years as a police officer and 6 and a half years as an undercover narcotics officer, he had participated in thousands of drug-related investigations and had personally arrested over 450 individuals for narcotics offenses.  Based on this experience, Officer Rubalcava knew that rock cocaine and heroin were the drugs that were primarily sold on the street where [petitioner] contacted him. This information and [petitioner's] actions led the officer to opine that [petitioner] had offered to sell him either cocaine or heroin, and that he specifically intended to complete the sale of either drug when he approached three different people on the street and then proceeded to another area where rock cocaine was predominantly sold. [Petitioner] forfeited the right to challenge this opinion by failing to contest it below.  (See <u>People v. Fields</u> (1998) 61 Cal.App.4th 1063, 1071.)  In any event, the officer's experience and observations gave him sufficient expertise to render his opinion regarding the nature of the substance [petitioner] was offering to sell.  (<u>Ibid.</u>)

(Lodgment No. 9 at 3-6) (footnote in original [renumbered]).

## B.    Analysis of Petitioner's Claim

The California Court of Appeal's application of <u>Jackson</u> was not objectively unreasonable. In rejecting petitioner's claim, the court of appeal highlighted the following evidence from the record:  petitioner approached the undercover officer in an area known for heroin and cocaine sales and asked if the officer was "looking for something"; the officer asked for a "20," which on the street meant $20 worth of narcotics, and handed petitioner a $20 bill; petitioner told the officer he was leaving his blanket as collateral, from which could be inferred that petitioner intended to return after purchasing the drugs; after taking the $20 bill petitioner approached and appeared to speak to three different individuals who were located in an area known to be frequented by drug dealers selling rock cocaine; and then petitioner continued walking along a route known for

---

[4]    We also note the jury effectively rejected the claim that [petitioner] merely intended to commit theft by fraud by finding him not guilty of committing petty theft with a prior conviction, in violation of [California] Penal Code sections 484, subdivision (a) and 666.

1    cocaine sales.  The state court reasonably concluded that, from the foregoing evidence, as well

2    as Officer Rubalcava's expert testimony regarding heroin and rock cocaine sales in the area, a

3    juror could infer that petitioner made an offer to sell cocaine or heroin, and made the offer with the

4    specific intent to sell the controlled substance.  In other words, the court of appeal reasonably

5    determined that, based on the record, a rational juror could find beyond a reasonable doubt that

6    there was sufficient evidence that petitioner violated California Health & Safety Code § 11352(a).

7         Because the California Court of Appeal's determination was not contrary to, or an

8    unreasonable application of, the <u>Jackson</u> standard, habeas relief for Ground Three is denied.  28

9    U.S.C. § 2254(d).

10

11   **GROUND FOUR:   TRIAL COURT ERROR**

12        Petitioner contends in Ground Four that the trial court committed error warranting habeas

13   relief.  Specifically, he asserts: "Trial court erred when opinion of fact to jury; upon defense motion

14   objection to said opinion . . . trial court reversed opinion, concurrently denying motion to [petitioner]

15   [sic]." (Petition at 6).  In support, petitioner attaches a portion of his voir dire transcript concerning

16   the trial court's instruction to the jury panel regarding the reasonable doubt standard.  (<u>See</u> Petition

17   Attachment).  Based on the attachment, and the lack of any further explanation from petitioner,

18   the Court construes petitioner's claim as one of instructional error.

19        During voir dire, the trial court stated the following to the parties in a proceeding outside the

20   presence of the jury:

21              [ ] [A] couple of things we need to address.

22              First, there was an objection that [defense counsel] made
             yesterday regarding the court's example of walking across the street
23           safely and not getting hit by a car, and the precautionary measures
             one might take in order to assure safe passage across the street as
24           demonstrating proof beyond a reasonable doubt.

25              And whereas, I think that it does, I have had it brought to my
             attention by [defense counsel] various cases that deal with this issue.
26           And the one message is very clear in those cases and that is that the
             court is better advised not to engage in such things, should not
27           provide the jurors with various examples because of a concern that
             the standard will be reduced from proof beyond a reasonable doubt
28           to a preponderance of the evidence.

13

1                   And that advice is well-taken and certainly will be heeded by
this court forthwith as to this case as well as future cases.

2

3                   So in order to clarify the issue and to avoid any chance that the
jurors might employ the wrong standard, what I'm going to do is tell
them to do the very, very thing that [defense counsel] has requested

4 and that is disregard my previous example.

5 (Lodgment No. 3 at 101).

6       Later, in front of the jury panel, the trial court instructed the prospective jurors to disregard

7 the court's previous "crossing the street" example to explain the reasonable doubt standard:

8              . . . I've given some additional thought, a lot of thought
overnight, about something that I said to you.  I gave you an example
hoping that it would be helpful.  And that concerns proof beyond a

9 reasonable doubt.

10

11             Do you remember the discussion about stopping at the
intersection and crossing the street?

12                           * * *

13              . . . [O]ne thing that you have to keep in mind is that on an
everyday basis, the sort of standard that you apply in making

14 decisions is typically a lower standard than what is required in a
criminal case.

15

16              So in an abundance of caution, and to make sure that you
apply the correct standard in this proceeding, which is important to
assure justice for the benefit of both sides, not only the defendant, but

17 the people too, that you disregard the example that I gave to you . . .
. [¶] [and] apply the law that I will read to you in this case.

18

19 (Lodgment No. 3 at 110-11).

20       The trial court then read the reasonable doubt instruction to the jury panel.  (Lodgment No.

21 3 at 111-12; <u>see</u> CT 80).

22       To obtain federal habeas relief, a petitioner must show not only that instructional error

23 occurred, but that the error so infected the entire trial that the resulting conviction violated due

24 process.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991);

25 <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).  "[I]t must

26 be established not merely that the instruction is undesirable, erroneous or even 'universally

27 condemned,' but that it violated some right which was guaranteed to the defendant by the

28 Fourteenth Amendment."  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d

1  368 (1973).  In making this determination, the reviewing court must not view the instruction in

2  isolation, but should consider it in the context of the trial record and the instructions as a whole.

3  Estelle, 502 U.S. at 72.  Moreover, a petitioner is not entitled to habeas relief unless the error had

4  a "substantial and injurious effect or influence in determining the jury's verdict."  See Brecht v.

5  Abrahamson, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); see also Clark v.

6  Brown, 450 F.3d 898, 905 (9th Cir. 2006) (applying Brecht "substantial and injurious effect"

7  standard to claim of instructional error).

8         Here, petitioner's claim of instructional error does not warrant habeas relief.  Even if the trial

9  court erred when it gave its own example to the prospective jurors to illustrate the reasonable

10  doubt standard, the error was remedied when the trial court subsequently told the jurors to

11  disregard the example.  The trial court then explained to the jurors that they were to follow the

12  CALJIC reasonable doubt instruction (i.e., CALJIC No. 2.90), and were read the instruction not

13  only during voir dire, but again before deliberations commenced.  (See Lodgment No. 3 at 111-12;

14  RT 1296-97).  The Court presumes that the jury understood and followed the instructions, and

15  correctly applied the reasonable doubt standard when deliberating petitioner's case.  See Weeks

16  v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) (jury is presumed to

17  understand and follow instructions).  Accordingly, because any error on the part of the trial court

18  was remedied by its curative instruction, there is no reasonable probability that the error had a

19  "substantial and injurious effect or influence" on the verdict.  Brecht, 507 U.S. at 637-38.

20         For the foregoing reasons, the Court concludes that no habeas relief is warranted for

21  Ground Four as it is "perfectly clear" that petitioner does not raise a colorable federal claim.

22  Cassett, 406 F.3d at 623-24.

23

24  **CERTIFICATE OF APPEALABILITY**

25         Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a

26  certificate of appealability ("COA") when it denies a state habeas petition.  See also 28 U.S.C. §

27  2253(c).

28

1    A petitioner may not appeal a final order in a federal habeas corpus proceeding without

2    first obtaining a COA.  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A COA may issue "only

3    if . . . [there is] a substantial showing of the denial of a constitutional right."  28 U.S.C. §

4    2253(c)(2).  A "substantial showing . . . includes showing that reasonable jurists could debate

5    whether (or, for that matter, agree that) the petition should have been resolved in a different

6    manner or that the issues presented were 'adequate to deserve encouragement to proceed

7    further.'"  Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation

8    omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000).  Thus, "[w]here a

9    district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must

10   demonstrate that reasonable jurists would find the district court's assessment of the constitutional

11   claims debatable or wrong."  Slack, 529 U.S. at 484.

12       The Court concludes that, for the reasons set out above, jurists of reason would not find

13   the Court's assessment of petitioner's claims debatable or wrong.  Accordingly, a certificate of

14   appealability is **denied**. Petitioner is advised that he may not appeal the denial of a COA, but he

15   may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of

16   Appellate Procedure.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

## VI.

## ORDER

20       For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying

21   and dismissing the Petition with prejudice.  A certificate of appealability is also denied.

DATED:  March 13, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE